**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | |
|---|---|
| FINALROD IP, LLC, and R2R AND D, LLC d/b/a SUPEROD,<br><br>    Plaintiffs,<br><br>v.<br><br>JOHN CRANE, INC, and JOHN CRANE PRODUCTION SOLUTIONS, INC.,<br><br>    Defendants. | Case No.: 7:15-cv-00097-DAE<br><br>JURY TRIAL DEMANDED |

**JOHN CRANE, INC. AND JOHN CRANE PRODUCTION SOLUTIONS, INC.'S OPPOSED MOTION TO DISQUALIFY THE MATTHEWS FIRM <u>FROM REPRESENTING PLAINTIFFS</u>**

Defendants John Crane Inc. and John Crane Production Solutions Inc. ("JCPS") (collectively "John Crane" or Defendants) file this brief in support of their motion to disqualify the Matthews, Lawson, McCutcheon & Joseph, PLLC firm ( hereinafter "Matthews Firm") from representing Plaintiffs Finalrod IP LLC and R2R and D, LLC d/b/a/ Superod (collectively "Superod" or Plaintiffs)  in this action.  As part of its acquisition of a company named Fiberod, Inc., John Crane purchased intellectual property related to the construction and use of suckerods, including patents covering that technology.  The Matthews Firm assisted Fiberod and John Crane in obtaining and maintaining those patents.  Now, the Matthews Firm is suing John Crane for infringement of a new patent it helped Superod obtain and is assisting Superod in defending against John Crane's counterclaims for infringement of the patents the Matthews Firm help John Crane obtain.  Because the Matthews Firm had an attorney-client relationship with John Crane

1

involving matters directly related to the counterclaims asserted by John Crane in this lawsuit, the Matthews Firm cannot and should not represent Plaintiffs in their suit against John Crane.

I.   STATEMENT OF FACTS

### A. The Matthews Firm Has A Long Relationship With Fiberod And John Crane, Including In Relation To The Patents At Issue Here

Plaintiffs are companies founded by Russell Rutledge. Rutledge was the majority owner and Chairman and CEO of The Fiber Composite Company d/b/a Fiberod, Inc. and related companies Fiberod Industries, Fiberod, Inc., and FC Patent Ltd. (hereinafter "Fiberod") when JCPS acquired them in 2008.[1] JCPS and Fiberod entered into an Asset Purchase Agreement (the "APA") under which JCPS acquired all of Fiberod's assets, including its real and intellectual property. (Ex. 1, APA.) But this was no mere transfer of assets; this purchase was a sale and transfer to JCPS of the *entire* tangible and intangible assets of the multiple entities owned and operated by Rutledge as Fiberod. Fiberod was in the business of selling and installing suckerods, which is the technology at issue in this case, and since its acquisition by JCPS, the company has been operating as the same business—selling and installing suckerods for the production of oil and gas.[2]

The Fiberod patents, trademarks, registrations, applications, and other intellectual property accounted for a substantial amount of the purchase price in the acquisition. (Ex. 1, APA.) After the APA was finalized, John Crane continued to use the Matthews Firm to perform various legal services, including prosecution of intellectual property matters for John Crane at the Patent and Trademark Office ("PTO") and the payment of maintenance fees. (*See* Ex. 2,

---

[1] The sellers in the APA were Fiberod, FC Patent, Ltd., Fiberod Industries, LLC, Fiberod, Inc., Russell Rutledge, and John Erazim. The buyers in the APA were FR Acquisition Sub., Inc. and its parent company, Upstream Energy Services, Inc. The Fiberod entity was later renamed as part of JCPS. For clarity, John Crane will refer to the sellers under the APA as "Fiberod" and to the buyers as "JCPS."

[2] See John Crane's website detailing Fiberod Brand Sucker Rods at: https://www.johncrane.com/products/artificial-lift/sucker-rods

Bills detailing IP work.)  The Matthews Firm's work for Fiberod and John Crane including work on U.S. Patent No. 6,193,431 ("the '431 patent") and U.S. Patent No. 8,113,277 ("the '277 patent"), the two patents asserted in John Crane's counterclaims.  The Matthews Firm prosecuted those patents and provided additional legal services to JCPS after the acquisition related to that intellectual property.

In 2011, Rutledge left John Crane / Fiberod and founded the plaintiff companies to compete with John Crane based on the same technology he sold to John Crane in 2008.  (Ex. 3, Texas SOS Organization Inquiry Information.)  In an apparent effort to undercut John Crane, plaintiffs filed this suit using John Crane and Fiberod's former intellectual property counsel.  In short, Fiberod and John Crane engaged and paid the Matthews Firm to secure and protect intellectual property that the Matthews Firm now seeks to attack via this litigation.  Another federal court, faced with a similar situation involving these same parties disqualified the Matthews Firm because of their work for Fiberod and JCPS.[3]  *See John Crane Production Solutions Inc. v. R2R And D, LLC, et al.*, 2012 WL 3453696 (ND Tex. Aug. 14, 2012) (herein after "*JCPS 2012 Action*").  The same result should occur here.

## II. LEGAL STANDARD

According to this Court's local rules, "[m]embers of the bar of this court and any attorney permitted to practice before this court must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct." Local Rule AT–7(a). Disciplinary Rule 1.09 specifically addresses conflicts of interest arising from prior representations:

---

[3] The previous litigation in the Northern District of Texas was centered around a trademark registration dispute between the similar marks of the Fiberod and Finalrod.  In that case, the Court held the Matthews Firm should be disqualified as well because of its previous work for John Crane and the similarity between the work and the dispute that arose.  *See John Crane Production Solutions Inc. v. R2R And D, LLC, et al.*, Case No 3:11-cv-032370D (ND Tex. 2012).

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
> (1)    in which such other person questions the validity of the lawyer's services or work product for the former client;
> (2)    if the representation in reasonable probability will involve a violation of Rule 1.05[4]; or
> (3)    if it is the same or substantially related matter.
> (b) Except to the extent authorized by Rule 1.10, when lawyers are to have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a)-(b). When deciding a motion to disqualify, the court should consider both the Texas Disciplinary Rules of Professional Conduct, as well as applicable national ethical standards, such as the ABA Model Rules of Professional Conduct ("ABA Model Rules"). *See In re Dresser Indus. Inc.*, 972 F.2d 540, 543-45 (5th Cir. 1992). Here, the ABA standard is the same in all material respects and therefore the outcome is the same under either rule.[5]

In addition to the substantial relationship test, the Court may look to the policy considerations based on the ABA Canons of professional behavior to strengthen the conclusions that disqualification is merited. Based upon ABA Canons this court can consider whether conflict has "(1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs

---

[4] Texas Disciplinary Rule of Professional Conduct 1.05(b) does not permit an attorney to (1) reveal confidential information of a client or a former client to: (i) a person that the client has instructed is not to receive the information; or (ii) anyone else, other than the client, the client's representatives, or the members, associates or employees of the lawyer's law firm; (2) use confidential information of a client to the disadvantage of the client unless the client consents after consultations; (*3) use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known*; (4) use privileged information of a client for the advantage of the lawyer or of a third person, unless the client consents after consultation. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05 (Emphasis added).

[5] The ABA Model Rule 1.9(a) states: "A lawyer who has formally represented a client in a matter shall not thereafter represent another person in the same or a substantially related manner in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation…."

any social interests which will be served by the lawyer's continued participation in the case." *In re Dresser*, 972 F.2d at 544. This case meets the test for impropriety and any social interest served by the continued participation by the Matthews Firm is outweighed by the likelihood of public suspicion from the improprieties contained in this action.

"A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *In re Am. Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992) (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989)).

**III.   ARGUMENT**

The Matthews Firm's representation of Plaintiffs in this case is a clear violation of Disciplinary Rule 1.09(a)-(b) due to the Matthew's Firm's prior representation of Defendants in connection with their patents at issue in this case. Policy considerations dictate that the Matthews Firm should be disqualified because all fairness dictates that they should not be allowed to represent one party in seeking and protecting intellectual property, and then later represent another party seeking to violate that intellectual property. Further, when the two-part test is applied to the facts here, both factors overwhelmingly support disqualification.

**A.   JCPS And The Matthews Firm Had An Attorney-Client Relationship**

There is no serious dispute that the first prong of the substantial-relationship test is met— JCPS and the Matthews Firm had an attorney-client relationship. *See Am. Airlines,* 972 F.2d at 614. The Matthews Firm acted, post acquisition, as patent prosecution counsel for JCPS in connection with the patents asserted by JCPS in this case. That reason alone satisfies the first prong of the analysis. In addition, JCPS's acquisition of Fiberod passed the preexisting attorney-

client relationship and ability to waive privilege from Fiberod to JCPS. *See Commodity Futures Trading Comission v. Weintraub*, 471 U.S. 343, 349 (1985).

### i. The Matthews Firm Had An Attorney-Client Relationship With JCPS After The Acquisition

There can be no dispute that the Matthews Firm was intellectual property counsel to JCPS. The Matthews Firm acknowledged the existence of an attorney-client relationship when it brought a suit for the payment of contested fee invoices in 2012. (*See* Ex. 2, Bills Detailing IP Work.) The invoices in that case allegedly totaled to $380,657.24, including $273,683.50 for patent matters and $108,929.25 for patent, trademark, and litigation matters. (*Id.*) Contained in those contested bills are over 100 pages detailing the work purportedly performed by the Matthews Firm on JCPS's behalf related to the intellectual property at issue in this case. (*Id.*) In particular, the Matthews Firm was patent counsel for JCPS with respect to the '431 and '277 patents, which have been asserted by JCPS in this case. (*Id.*) The file histories for these patents show the Matthews Firm was acting as prosecution counsel on these patents at least until April of 2009, when it filed a power of attorney granting a different firm the control over the '277 patent application. (Ex. 4, '431 File History) (Ex. 5, '277 File History, including POA from Matthews Firm to Leydig Voit.) Thus, there is no serious dispute that an attorney-client relationship existed between the Matthews Firm and JCPS related to patents and intellectual property at issue in this case.

### ii. The Attorney-Client Privilege that Fiberod Held Prior to the Acquisition Transferred to JCPS

Beyond the work the Matthews Firm did for JCPS after the acquisition, the attorney-client privilege that Russell Rutledge and Fiberod help prior to the acquisition transferred to JCPS (and Fiberod) through the sale and acquisition under the APA. The Supreme Court has

stated that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985).  Courts have since established that transfer of the privilege depends on whether the "practical consequences of the transaction result in the transfer of control of the business and the continuation of business under new management." *Soverain Software LLC v. Gap, Inc.*, 340 F.Supp.2d 760, 763 (E.D. Tex. 2004).  The privilege follows if the transaction essentially transfers control of the business and the business continues under new management.  *Id*.

The acquisition here resulted in the transfer of the preexisting attorney-client privilege.  This is so because even though styled as an "Asset Purchase Agreement," the sale was much more than that.  The APA provided for the transfer of all tangible and intangible assets to JCPS, including:

   a) all Accounts Receivable and prepaid expenses;
   b) all machinery, equipment, Inventory, work-in-process, office furniture, fixtures, automobiles, leasehold improvements, computers, tools, manufacturing, warehouse and office supplies and stationary;
   c) all information, files, books records, data, plans and recorded knowledge, including without limitation customer and supplier lists,
   d) all Confidential Information;
   e) all insurance, insurance proceeds and rights to receive insurance proceeds, to the extent that the same relate to periods, events, conditions or other matters existing or occurring prior to the Closing Date;
   f) all Company IP, including the name "Fiberod" and all similar names;
   g) all telephone numbers and facsimile numbers currently used in the Business;
   h) all rights under any permits from any Governmental or Regulatory Entity that have been issued or applied for;
   i) all information, files, books, records, data, plans and recorded knowledge, with respect to customers, suppliers, employees and other aspects of the Business;
   j) all rights under any Contracts (the "Assumed Contracts"), including those listed on Schedule 1 .1.1 (j);
   k) all Owned Real Property; and
   l) the business and operations of Sellers as a going concern.

APA, Article 1, Section 1.1.  The only excluded items were cash and cash equivalents, charter documents minute books and the like, Russell Rutledge's bank account, the rights that accrued for seller under the agreement, and assets not related to the business.  (Ex. 1, APA § 1.1.2.)  Thus, everything that was related to the business was transferred "as a going concern" to JCPS under the agreement including all intellectual property, confidential information, and all information and other aspects of the Business.

Further, key employees were identified to continue operations for JCPS.  Those employees were identified as "Designated Employees" under section 5.13 of the APA.  These employees consisted of a group of employees that "have been engaged in the Business at any time during the past 12 months."  (Ex. 1, APA § 5.13.)  Russell Rutledge was one of those employees. (Ex. 1, APA § 6.6. "Each of Russ Rutledge and John Erazim shall have entered into employment or consulting agreements, respectively, with Buyer on mutually agreeable terms including a covenant not to compete for the term of the agreements and three years thereafter.")[6]

Section 5.1 of the APA contemplated that the business would be ongoing post-acquisition.  Section 5.1 required the Seller prior to closing to "conduct the Business only in the ordinary course and consistent with prior practice," "maintain and keep and preserve its assets and properties in their normal condition and repair and maintain insurance thereon, all in accordance with present practices…," "use its reasonable best efforts to preserve intact its corporate existence…," "not grant any increase in the salaries or other compensation of any of its officers or other salaried employees," and "not grant any increase in the pension, retirement or other employment benefits of any character of, or grant any new benefits to, any of its present or former officers or employees…."  (Ex. 1, APA Section 5.1.1-11.)  There can be no dispute,

---

[6] Although not directly at issue in this case, it is worth noting—because it may raise a suspicion of sharp business practices—that Russell Rutledge formed the Plaintiff companies soon after the non-compete period ended under the APA.  (*See* Ex. 1, APA § 5.6).

therefore, that JCPS intended to continue operating Fiberod as a continuing business, but with a change in management.

All of Fiberod's intellectual property was sold to JCPS under the APA as well. *(*Ex. 1, APA § 3.14; Ex. 7, IP Disclosure Section § 3.14.) The list of patents, trademarks, and ongoing applications shows there was a substantial amount of ongoing work to be performed post-acquisition, including with respect to U.S. Patent No. 6,191,431 and U.S. Application No. 11/715,088, which ultimately issued as U.S. Patent No. 8,113,277, both of which have been asserted by John Crane in the current case. *Id.*

Based on these facts, control of Fiberod passed to new management at JCPS, and the authority to assert and waive the corporation's attorney-client privilege passed to JCPS as well. *See Commodity Futures Trading Comm'n*, 471 U.S. at 349. Therefore the Matthews Firm owes an attorney-client duty to JCPS for the work it performed for Fiberod before the acquisition. *Id.*

### B. The Current Case Is Substantially Related To The Matthews Firm's Prior Work For JCPS

The Matthews Firm's prior work for John Crane involved obtaining the two patents asserted in John Crane's counter claims. Court have held "the subject matter 'does not need to be 'relevant' in the evidentiary sense to be 'substantially related.' It need only be akin to the present action in a way reasonable persons would understand as important to the issues involved." *Id*. at 619, 623 (quoting *Corrugated Container*, 659 F.2d at 1346). Here the subject matter for which the Matthews Firm represented John Crane—two U.S. patents—are directly at issue in this case. Because the Matthews Firm acted as prosecution counsel for these two patents, the substantial relationship test is clearly met. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. 1981).

The Mathews Firm was prosecution counsel when the '431 and '277 patents were filed and prosecuted. (Ex. 4, Prosecution History of '431 Patent; Ex. 5, Prosecution History of '277 Patent.)  Thus, the Matthews Firm necessarily gained and maintained confidences regarding the inventions and the inventions' patentability during the prosecution and preparation of the patents at issue in this case. *American Airlines*, 972 F.2d at 614 ("Once it is established that the prior matters are substantially related to the present case, 'the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation.'") (quoting *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1028 (5th Cir.)).

In the present case, The Matthews Firm has alleged, on behalf of Superod, the '431 and '277 patents are not infringed and are invalid. (*See* Answer to Counterclaims, ECF No. 16.) Thus, The Matthews Firm is challenging the very patents it previously helped Fiberod and John Crane obtain.  The Matthews Firm's prior work disqualifies it from representing plaintiff against the Matthews Firm's former client.

### C. Policy Considerations Dictate that The Matthews Firm Should be Disqualified

Beyond the two-part test discussed above, important policy considerations weigh in favor of disqualification, too.  The Model Rules adopted by the American Bar Association ("ABA"), the local rules adopted by this Court, and the Texas rules of ethics are all relevant to a motion to disqualify, but none are dispositive. *See In re ProEduc. Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (considering ABA Model Rules, local rules, and Texas rules); *In re Dresser Indus., Inc.*, 972 F.2d 540, 543-44 (5th Cir. 1992) (noting the usefulness of ABA cannons in disqualification analysis).  The Rules serve not only to "preserve the purity of particular trials," but also to "protect individual parties against the adverse use of information" and to "aid the frank exchange between attorney and client." *In re American Airlines, Inc.*, 972 F.2d 605, 619 (5th Cir. 1992).

And a "[d]istrict [c]ourt is obliged to take measures against unethical conduct occurring in connection with any proceeding before it. *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976).

The ABA canons consider whether a conflict has "(1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *In re Dresser* 972 F.2d at 544. Permitting attorneys to represent one client, obtain patents for that client, and then represent others seeking to attack that intellectual property is improper. The Matthews Firm's actions in this case are improper and at minimum give the appearance and suspicion of impropriety. *See Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir.1979) ("The obligation of an attorney not to misuse information acquired in the course of representation serves to vindicate the trust and reliance that clients place in their attorneys."). The Matthews Firm performed legal work for John Crane to obtain and protect intellectual property that the Matthews Firm now must attack on behalf of Superod. Permitting the Matthews Firm to represent Superod in violation of its duty of loyalty to John Crane would undermine the integrity of our judicial system. *Duncan v. Merrill Lynch Pierce, Fanner & Smith, Inc.*, 646 F.2d 1020, 1027 (5th Cir. 1981).

Further, the Texas Disciplinary Rule of Professional Conduct 1.05(b) forbids a lawyer to "use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known…." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05. John Crane has not consented to this representation, and there is no social interest that is served by allowing the Matthews Firm to continue to represent Superod when the

Matthews Firm possesses John Crane's confidential information. To the contrary, allowing this sort of behavior would only undermine the public's confidence in the legal profession. *See*, *e.g.*, *E.F. Hutton & Co. v. Brown*, 305 F. Supp. 371, 395 (S.D. Tex. 1969) (noting that allowing attorneys to represent adverse clients in the same manner would undermine public confidence in the legal system); *see also NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989) (noting that "unrestrained representation of new clients against former clients" would destroy the public confidence in the legal profession). To make matters worse, the Matthews Firm knows better, yet took on this representation anyway.

The Matthews Firm was disqualified in another case stemming from intellectual property transferred from Fiberod to John Crane under the APA. *See JCPS 2012 Action*, 2012 WL 3453696. In that case, John Crane was entangled in a suit with the same Russ Rutledge companies that are the plaintiffs in this case regarding the use of the FIBEROD trademarks that John Crane purchased in the Fiberod Asset Purchase Agreement. *JCPS 2012 Action*, 2012 WL 3453696, at *1. Again, the Matthews Firm attempted to represent Rutledge's new companies despite its involvement in securing and protecting those trademarks. *Id*. John Crane moved to disqualify the Matthews Firm, and the court agreed. *JCPS 2012 Action*, 2012 WL 3453696, at *8. In the *JCPS 2012 Action*, the evidence showed that the Matthews Firm originally registered and prosecuted the FIBEROD trademark with the PTO and argued that the mark was not descriptive, entitling it to protection. *JCPS 2012 Action*, 2012 WL 3453696, at *6. The court held the cases were substantially related because similar determinations would be made in the litigation as in the prosecution and based on the same law. *Id*., 2012 WL 3453696, at *7. The court therefore concluded "the existence of a substantial relationship between these two representations is 'self-evident.'" *Id*., 2012 WL 3453696, at 6 (quoting *In re Corrugated*

*Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. 1981) ("The existence of a 'substantial relationship' . . . is self-evident . . . . Where parts of the present action and the past representation concern the very same subject matter, reasonable minds must agree they are substantially related.")). The case for disqualifying the Matthews firm here is even stronger, because the Matthews Firm is challenging the patents it helped Fiberod and John Crane obtain, so this Court should reach the same conclusion as the prior court. *Id.*[7]

## IV. CONCLUSION

For these reasons above, this court should find that the Matthews Firm's representation of Superod in this case presents a conflict of interest under Texas Disciplinary Rule of Professional Conduct 1.09 and justifies disqualification.

---

[7] To the extent plaintiff needs additional time to find new counsel, John Crane would consent to a reasonable time period by which to find counsel.

*Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. 1981) ("The existence of a 'substantial relationship' . . . is self-evident . . . . Where parts of the present action and the past representation concern the very same subject matter, reasonable minds must agree they are substantially related.")). The case for disqualifying the Matthews firm here is even stronger, because the Matthews Firm is challenging the patents it helped Fiberod and John Crane obtain, so this Court should reach the same conclusion as the prior court. *Id.*[7]

## IV. CONCLUSION

For these reasons above, this court should find that the Matthews Firm's representation of Superod in this case presents a conflict of interest under Texas Disciplinary Rule of Professional Conduct 1.09 and justifies disqualification.

---

[7] To the extent plaintiff needs additional time to find new counsel, John Crane would consent to a reasonable time period by which to find counsel.

Dated: September 23, 2015                    Respectfully submitted,

By: */s/ Craig A. Stanfield*
    Craig A. Stanfield
    State Bar No. 24051371
    cstanfield@morganlewis.com
    Ryan B. McBeth
    rmcbeth@morganlewis.com
    State Bar No. 24078955
    Nicholaus E. Floyd
    State Bar No. 24087524
    nfloyd@morganlewis.com
    Morgan, Lewis & Bockius LLP
    1000 Louisiana Street, Suite 4000
    Houston, TX 77002-5005
    Tel: (713) 890-5000
    Fax: (713) 890-5001

    Jason C. White *(pro hac vice)*
    jwhite@morganlewis.com
    Morgan, Lewis & Bockius LLP
    77 W. Wacker Drive, Ste. 500
    Chicago, IL  60601
    Tel:  (312) 324-1000
    Fax:  (312) 324-1001

    *Attorneys for Defendants John Crane, Inc. and John Crane Production Solutions, Inc.*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the parties have complied with Local Rule CV-7(i)'s meet and confer requirement. No agreement could be reached because the Matthews Firm is unwilling to withdraw as counsel for Plaintiff.  The Defendants hereby request the Court's assistance in resolving this dispute.

*/s/ Craig A. Stanfield*
Craig A. Stanfield

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically, and thus served on all counsel of record, pursuant to Local Rule CV-5(a) and (b) on September 23, 2015.

*/s/ Craig A. Stanfield*
Craig A. Stanfield
