UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| FINALROD IP, LLC, R2R | § | No. 7:15-CV-97-DAE |
| AND D, LLC, d/b/a SUPEROD | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| JOHN CRANE, INC., JOHN CRANE | § | |
| PRODUCTION SOLUTIONS, INC., | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

ORDER GRANTING MOTION FOR RECONSIDERATION

Before the Court is Finalrod IP, LLC ("Finalrod") and R2R and D, LLC, d/b/a Superod's (collectively "Plaintiffs") Rule 54(d) Motion for Reconsideration of this Court's Order on John Crane, Inc. and John Crane Productions, Inc.'s (collectively "Defendants") Motion to Disqualify the Matthews Firm from Representing Plaintiffs. (Dkt. # 44.) Pursuant to Local Rule 7(h), the Court finds this matter suitable for disposition without a hearing. After careful consideration of the memoranda in support of and in opposition to the motion, the Court, for the reasons that follow, **GRANTS** Plaintiffs' motion.

1

BACKGROUND

In 2008, Defendant John Crane Production Solutions, Inc. ("JCPS") entered into an Asset Purchase Agreement ("APA") with The Fiber Composite Company d/b/a Fiberod, Inc. and related companies Fiberod Industries, Fiberod Inc., and FC Patent Ltd. (collectively "Fiberod"). (Dkt. # 19 at 2.) At that time, Russell Rutledge ("Rutledge") was the majority owner, Chairman, and Chief Operating Officer ("COO") of Fiberod. (Id.) Fiberod was in the business of selling and installing suckerods[1] for the production of oil and gas. (Id.) According to Defendants, JCPS acquired all of Fiberod's tangible and intangible assets under the APA. (Id.) These assets included Fiberod's patents, trademarks, registrations, applications, and other intellectual property. (Id.)

After the APA was finalized, Defendants used the firm of Matthews, Lawson, McCutcheon & Joseph, PLLC ("the Matthews firm" or "the firm") to perform various legal services, including handling intellectual property ("IP") matters at the United States Patent and Trademark Office ("PTO") and paying maintenance fees. (Id.) According to Defendants, some of the IP matters handled by the Matthews firm included work on U.S. Patent No. 6,193,431 (the "'431 patent") and U.S. Patent No. 8,113,277 (the "'277 patent"). (Id. at 3.)

---

[1] Suckerods are "used with a sub-surface pump in instances where the pressure in an oil reservoir is not sufficient to lift the oil to the surface." (Dkt. # 20 at 1, n. 1.)

Subsequently, in 2011, Rutledge left employment with Defendants and founded the plaintiff companies, R2R and Finalrod. (Id.) All parties agree that Plaintiffs and Defendants are competing companies in the business of selling suckerods for use in oil wells. (Id.; Dkt. # 20 at 1.) On June 29, 2015, Plaintiffs filed suit against Defendants, alleging infringement of U.S. Patent No. 8,851,162 (the "'162 patent"). (Dkt. # 1.) On September 15, 2015, Plaintiffs filed an amended complaint, adding infringement of U.S. Patent No. 9,045,951 (the "'951 patent") to their claim. (Dkt. # 18.) On October 16, 2015, Defendants filed an answer to Plaintiffs' amended complaint, alleging affirmative defenses and asserting counterclaims against Plaintiffs for the invalidity and infringement of certain patents, including the infringement of the '431 and the '277 patent. (Dkt. # 30 at 11, 13.) On November 12, 2015, Defendants omitted their counterclaim for the infringement of the '277 patent.[2] (Dkt. # 37.)

On December 9, 2015, the Court granted Defendants' motion to disqualify the Matthews firm from representing Plaintiffs. (Dkt. # 40.) Based upon submissions and the record at the time, the Court determined that the Matthews firm's prior work on the '431 patent was substantially related to and

---

[2] Defendants amended their counterclaim regarding the '277 patent after parties filed briefing in the underlying motion to disqualify. (See Dkt. # 37.) Although the parties referred to both the '431 patent and the '277 patent in their briefing regarding Defendants' counterclaims, the Court only addressed the arguments regarding the '431 patent in light of Defendants' amendment.

involved the same subject matter as its present representation of Plaintiffs for infringement of that patent.  (Dkt. # 40 at 13.)  The Court further held that the Matthews firm's work on the '431 patent involved obtaining confidential information which ultimately disqualified the firm from representing Plaintiffs on matters in the pending case.  (Id.)

On January 5, 2016, Plaintiffs filed the instant motion to reconsider the Court's order on the motion to disqualify.  (Dkt. # 44.)  On January 22, 2016, Defendants filed a response in opposition.  (Dkt. # 46.)

## APPLICABLE LAW

I.  Motion for Reconsideration

Plaintiffs have moved for reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure.  (Dkt. # 44.)  However, "[a] motion asking the court to reconsider a prior ruling is evaluated . . . as a motion . . . under Rule 59(e) . . . [when] filed within twenty-eight days after the entry of judgment."  Demahy v. Schwarz Pharma, Inc., 702 F.3d 177, 182 n.2 (5th Cir. 2012).  Plaintiffs' motion for reconsideration was filed within this twenty-eight day period.

"A Rule 59(e) motion calls into question the correctness of a judgment."  Templet v. Hydrochem, Inc., 367 F.3d 473, 478 (5th Cir. 2004). "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly

4

discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." Demahy, 702 F.3d at 182.  Rule 59(e), however, is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment," Templet, 367 F.3d at 478, and it "should not be used to . . . re-urge matters that have already been advanced by a party." Nationalist Movement v. Town of Jena, 321 F. App'x 359, 364 (5th Cir. 2009).  Reconsideration of a previous order is "an extraordinary remedy that should be used sparingly." Id.

II.   Motion to Disqualify

"When considering motions to disqualify, courts should first look to the 'local rules promulgated by the local court itself.'" In re ProEducation Int'l, Inc., 587 F.3d 296, 299 (5th Cir. 2009) (quoting F.D.I.C. v. U.S. Fire Ins., Co., 972 F.2d 605, 610 (5th Cir. 1992)).  The Local Rules of the Western District of Texas, in a section titled "Discipline of Attorneys," states that "[m]embers of the bar of this court and any attorney permitted to practice before this court must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct." W.D. Tex. Local Rule AT-7(a).

The Fifth Circuit, however, has stated that the Texas Rules "are not the sole authority governing a motion to disqualify." ProEducation, 587 F.3d at 299 (internal quotation omitted); see In re Dresser Indust., Inc., 972 F.2d 540, 543

(5th Cir. 1992) ("The district court clearly erred in holding that its local rules, and thus the Texas Rules, which it adopted, are the 'sole' authority governing a motion to disqualify."). In Dresser, the Fifth Circuit explained "[m]otions to disqualify are substantive motions affecting the rights of the parties and are determined by applying the standards developed under federal law." In re Dresser Indust., 972 F.2d at 543. In contrast, "[t]he district court's authority to promulgate local rules is derived from 28 U.S.C. § 2071, which allows the courts only to adopt rules for the conduct of their business." Id. "Thus, although the district court should determine the rules for the conduct of attorneys for the purpose of identifying conduct subject to sanctions, its local rules alone cannot regulate the parties' rights to counsel of their choice." In re Dresser Indust., 972 F.2d at 543.

While a motion to disqualify is a substantive motion decided under federal law, a reviewing court must also "consider the motion governed by the ethical rules announced by the national profession in light of the public interest and the litigants' rights." ProEducation, 587 F.3d at 299. The Fifth Circuit has "applied the ethical canons contained in the [American Bar Association's ("ABA")] Model Code." In re Amer. Airlines, Inc., 972 F.2d 605, 610 (5th Cir. 1992). The Court therefore considers both the Texas Rules and the ABA's Model Rules.

Texas Rule 1.09 states:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

  (1) in which such other person questions the validity of the lawyer's services or work product for the former client;

  (2) if the representation in reasonable probability will involve a violation of Rule 1.05 [dealing with confidential client information]; or

  (3) if it is the same or a substantially related matter.

Tex. Disciplinary R. Prof'l Conduct 1.09, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G, app. A., art. 10, §9 (West 2005). The relevant ABA Model Rule, Rule 1.9(b), has some "linguistic differences" from Texas Rule 1.09, but "the two codes produce the same result application." ProEducation, 587 F.3d at 301.

A court's review of a motion to disqualify for prior representations is governed by the "substantial relationship" test. Amer. Airlines, Inc., 972 F.2d at 614. A party who seeks "to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations." Id. The party seeking disqualification bears the burden of proving the present and prior representations are substantially related. Id.

An attorney and a client can create an attorney-client relationship either explicitly or implicitly, through conduct manifesting an intention to create the attorney-client relationship.  Nolan v. Foreman, 665 F.2d 738, 739 n. 3 (5th Cir. 1982).  It "is usually not a difficult matter for the client to establish" an attorney-client relationship.  Parker v. Carnahan, 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied).

"Once it is established that the prior matters are substantially related to the present case, the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation." Id. (quotation omitted).  Although the test is categorical, and requires disqualification upon satisfaction of the substantial-relationship standard, it is not to be applied "in a mechanical way that might 'prevent[] an attorney from ever representing an interest adverse to that of a former client.'"  Id.  "Rather, a substantial relationship may be found only after the moving party delineates with specificity the subject matters, issues and causes of action common to prior and current representations and the court engages in a painstaking analysis of the facts and precise application of precedent." Id. (internal quotation omitted).

## DISCUSSION

Plaintiffs move for the Court's reconsideration on the basis that (1) the Order contains a manifest error of law because the Court combined two

distinct tests in determining whether there was a substantial relationship between the Matthews firm's prior and current representation; (2) the Court's adoption of Defendants' misinterpretation of the evidence and conclusory statements is a manifest error of fact, and (3) the Court should apply the correct test to the facts which show the Matthews firm should not be disqualified from representing Plaintiffs in this case.  (Dkt. # 44.)

In response, Defendants argue that the Court correctly applied both the substantial relationship test and Rule 1.09 of the Texas Rules of Disciplinary Conduct.  (Dkt. # 46-1 at 3.)  Defendants further assert that Plaintiffs' contentions regarding reconsideration are an attempt to re-hash previous arguments that were ultimately rejected by the Court.  (Id. at 7.)

At the outset, the Court notes Plaintiffs' concession that its "Counsel's briefing was not as clear as it could have been in distinguishing the two distinct grounds of disqualification identified in Defendant's Motion."  (Dkt. # 44 at 3.)  The Court also notes Plaintiffs' late attempt to support its argument against disqualification with additional briefing and arguments—not contained in Plaintiffs' response to Defendants' motion to disqualify—that the Matthews firm's prior representation did not involve acquiring any confidential information.  (Id. at 8.)  Indeed, the Court notes Plaintiffs' overall lack of adequate briefing in its response to Defendants' motion.  Nevertheless, to be thorough, and because

(1) disqualification is a severe action that should not be applied "mechanically" and, (2) a court should consider "all of the facts particular to the case," the Court will once again consider the merits of the parties' arguments in regard to its initial disqualification of the Matthews firm. See In re ProEducation Intern., Inc., 587 F.3d 296, 300 (5th Cir. 2009).

### A. Substantial Relationship Test

In their motion to disqualify, Defendants contend that the Court should disqualify the Matthews firm from representing Plaintiffs in the instant action because the firm previously assisted Defendants in obtaining and maintaining the '431 patent. (Dkt. # 19 at 1.) Defendants assert that they have both an attorney-client relationship with the Matthews firm and that there is a substantial relationship between the subject matter of the Matthews firm's former and present representations in regard to the '431 patent.

#### 1. Attorney-Client Relationship

Defendants contend that there is no serious dispute that the Matthews firm represented JCPS, thereby creating an attorney-client relationship. (Dkt. # 19 at 5.) Defendants assert that the Matthews firm represented JCPS in connection with the '431 patent Defendants assert in their counterclaim, and that JCPS passed its pre-existing attorney-client relationship with the Matthews firm on to Defendants when it acquired Fiberod. (Id. at 5–6.)

10

Plaintiffs, in their response, agree that the Matthews firm represented Defendants on a limited basis for IP matters from May 2008 until January 2009 for matters unrelated to the patents at issue in this case. (Dkt. # 20 at 4.) They also agree that the Matthews firm represented Defendants' predecessor company on IP matters. (Id.) Plaintiffs argue, however, that the Matthews firm did not represent Defendants on matters related to prosecution of the '431 patent, but only represented Rutledge individually for that matter. (Id.)

Because there is no dispute by Plaintiffs that the Matthews firm represented JCPS in at least a limited capacity related to IP matters after Defendants' acquisition of Fiberod, Defendants have established that an attorney-client relationship existed between JCPS and the Matthews firm. Defendants have also presented evidence that an attorney-client privilege was passed to JCPS from the Matthews firm work on Fiberod's assets prior to the APA because "[t]he practical consequences of [JCPS's purchase of Fiberod] were that control of Fiberod passed to JCPS" and that business was continued under JCPS's new management. See John Crane Prod. Solutions, Inc. v. R2R and D, LLC, No. 3:11-CV-3237-D, 2012 WL 3453696 at *4 (N.D. Tex. Aug. 14, 2012). As a result, "the attorney-client privilege followed" because "JCPS acquired nearly all of Fiberod's assets, including the assets necessary to continue running Fiberod's business." Id. (citing Soverain Software LLC v. Gap, Inc., 340 F. Supp. 2d 760, 763 (E.D. Tex.

11

2004); see Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 349 (1985) ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well."). Accordingly, the first prong of the substantial relationship test is met.

### 2. Substantially Related Matter

Having found that Defendants have met the first prong of the substantial relationship test, the Court now turns to the second prong. Defendants contend that the Matthews firm's work on the '431 patent involved in its counterclaim is directly at issue in this case, thereby meeting the substantial relationship test. (Dkt. # 19 at 9.) In response, Plaintiffs contend that the Matthews firm did not represent Defendants in the prosecution of the '431 patent, but that the firm represented only Rutledge, individually, as the inventor of the patent and prior to Defendants' acquisition of Fiberod. (Dkt. # 20 at 6.) Plaintiffs contend that, in any case, the firm's former representation is not substantially related to the matters in dispute in this case. (Dkt. # 44.)

The APA governing JCPS's purchase of Fiberod's assets specifically states that "the Sellers . . . own all the right, title and interest to each item of Company IP." (Dkt. # 19-1 at 21.) The "Sellers" are the collective companies comprising Fiberod—not Rutledge as an individual. Therefore, contrary to Plaintiffs' contention, the APA does not state that Rutledge personally owned the

12

'431 patent; in fact, the '431 patent is expressly included in the list of Company IP.[3] (Dkt. # 25-1 at 1.) As a result, the Court finds that the '431 patent was fully assigned and transferred to JCPS, and thereby Defendants, through the APA.

Furthermore, there is no dispute in this case that the Matthews firm initially represented Rutledge in obtaining and prosecuting the '431 patent. And, as addressed above, there is no serious dispute that the '431 patent was assigned to JCPS in accordance with the APA. Nevertheless, this assignment, by itself, is not sufficient to demonstrate that the Matthews firm's two representations are substantially related for purposes of disqualification.

In considering the evidence and arguments presented in this case, the Court does not find that a substantial relationship exists between the Matthews firm's two representations. The prosecution and assignment of the '431 patent by the Matthews firm is not substantially related to the matters in this case where the firm is defending Plaintiffs in a lawsuit against infringement of the '431 patent. See Commil USA, LLC v. Cisco Sys., Inc., __ U.S.__, 135 S. Ct. 1920, 1929 (2015) (holding that, in patent law, "[v]alidity and infringement are distinct issues, bearing different burdens, different presumptions, and different evidence"). As such, Defendants have not carried their burden of "specifically delineat[ing] the matters, issues, and causes of action common to these two representations." Nat'l

---

[3] The fact that Rutledge may have transferred the patent to JCPS does not change the fact that at the time of the APA, the '431 patent was the property of JCPS.

Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc., 60 F. Supp. 3d 751, 770 (W.D. Tex. 2014).  While it is true that both representations involved the '431 patent, that is the end of their similarity for disqualification purposes.  Cf. id. ("The Court concludes the two representations are substantially similar.  Both cases involve the same defendant opposing patent infringement claims related to the same control system with similar theories of liability and defenses.").  Disqualification, in this case, requires more than that two cases involve the same patent.  See Model Rules of Prof'l Conduct R. 1.9 cmt. 2 (2013) ("The scope of a "matter" for purposes of this Rule depends on the facts of a particular situation or transaction.  The lawyer's involvement in a matter can also be a question of degree. . . . A lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.").

      B.     Confidential Information Test

"[A] former client c[an] also disqualify counsel by showing that his former attorney possessed relevant confidential information in the manner contemplated by Rule 1.09(a)(2)."  Am. Airlines, 972 F.2d at 615.  Defendants assert that the Matthews firm work on the '431 patent involved not only patent prosecution and due diligence, but also involved confidential information relating

to the invention record with regard to that patent. (Dkt. # 25 at 2.) Therefore, Defendants contend that the Matthews firm necessarily gained and maintained confidences regarding the inventions involved in the patent and should be disqualified from representing Plaintiffs in this case on that basis. (Dkt. # 19 at 10.)

As evidence, Defendants provided the Matthews firm's invoices to JCPS, indicating that the firm performed various legal work subsequent to the APA for JCPS, including reviewing files for the preparation and assignment of the '431 patent. (Dkt. # 19-2 at 242–43.) Defendants have also submitted a copy of the lengthy and detailed patent application submitted by the Matthews firm for the '431 patent. (Dkt. # 19-4.) The Utility Patent Specification contains detailed information relating to the background and design of the suckerod. (Id.) It also contains information related to the methodology and modeling concerns of the suckerod as well as detailed comparisons of its designs. (Id.) Overall, this evidence may suggest that the Matthews firm played an integral part in the application process for the '431 patent, thereby obtaining confidential and proprietary information concerning that patent.

In opposition, Plaintiffs, in their motion to reconsider—only now—have responded to Defendants' evidence regarding the Matthews firm's acquirement of confidential information regarding the '431 patent. (Dkt. # 44 at 7–

9.) Plaintiffs contend that Defendants' invoices "merely show that the Matthews Firm drafted the assignment of the '431 patent for Defendants," but that "[t]he assignment is not part of the file history or prosecution of the '431 patent, and certainly does not require confidential information." (Id. at 8.)  Plaintiffs further assert that "[a]ssigning a patent is more akin to clerical or administrative work than legal work" and that "all information filed in the course of prosecuting a patent becomes public as of the date published pursuant to 35 U.S.C. § 122, or as the issuance date of the patent—February 27, 2001 for the '431 patent." (Id.)  Additionally, Plaintiffs assert that the Utility Patent Specification does not contain any confidential information because the information is available to the public through the PTO's Patent Application Information Retrieval system and available online. (Id. at 9.)

Despite the Court's agreement with Defendants contention that "motions for reconsideration 'cannot be used to raise arguments that could, and should, have been made before the judgment issued,'" (Dkt. # 46-1 at 2 (quoting Marseilles Homeowners Condo. Ass'n v. Fidelity Nat'l Ins. Co., 452 F.3d 1053, 1058 (5th Cir. 2008)), the Court nevertheless determines, on reconsideration, that Defendants did not provide sufficient evidence to meet their burden of demonstrating that confidential information was obtained in the Matthews firm's prior and current representation regarding the '431 patent.  The evidence

Defendants produced in support of their motion to disqualify does not demonstrate that any confidential information was obtained in regard to the '431 patent, especially in light of the public's ability to access the very documents which Defendants contend contain confidential information. While Defendants attempt to argue that the infringement issues regarding the '431 patent "will necessarily involve confidential information gathered in the course of prosecuting the '431 patent," they have failed to carry their burden to show that the Matthews firm's representation of Plaintiffs would in reasonable probability entail disclosure of any confidential information. See Tex. Disciplinary R. Prof'l Conduct 1.09(a)(2). Defendants have not delineated and explained the confidential information that the Matthews firm possesses and how it will affect the representation of Plaintiffs in the infringement claims regarding the '431 patent.

      Despite Plaintiffs' deficiencies in first responding to Defendants' motion to disqualify, the Court now finds Plaintiffs' arguments persuasive in regard to Defendants' inability to show that the Matthews firm obtained confidential information in its former representation of the '431 patent. Accordingly, this Court grants Plaintiffs' motion for reconsideration and Plaintiffs' counsel will not be disqualified from representing them in this matter.

CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' Rule 54(d) Motion for Reconsideration of this Court's Order on Defendants' Motion to Disqualify the Matthews Firm from Representing Plaintiffs. (Dkt. # 44.) Accordingly, the Matthews firm is no longer disqualified and may represent Plaintiffs for all matters in this case. The Court therefore **CANCELS** the hearing set in this case for March 21, 2016.

    **IT IS SO ORDERED**.

    **DATED**:  San Antonio, Texas, March 3, 2016.

_____
David Alan Ezra
Senior United States Distict Judge